UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:   SEVESTIN MARTIN                                    Case No. 19-12019-JDW
                                                            Chapter 13 Proceedings

AMENDED OBJECTION OF FIRST TOWER LOAN
TO CONFIRMATION OF PLAN

First Tower Loan, LLC, doing business as Tower Loan of Holly Springs (Tower), files this Objection to Confirmation of Chapter 13 Plan which plan was filed by the Debtor herein (Debtor shall mean joint petitioners as necessary) for the following reasons:

1. Debtor has filed a petition for bankruptcy pursuant to Chapter 13 of the United States Bankruptcy Code. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. §§105 and 1325. This is a core proceeding pursuant to 28 U.S.C. §157 (b) (2)(A) and (L). Tower has filed, or will file, a proof of claim in this case as a secured creditor in the amount of $4,381.07 and $1,403.85.

2. As collateral for the indebtedness, Debtor pledged to Tower certain personal property, and Tower financed a purchase money sales agreement. A copy of the documentation evidencing Tower's lien is attached hereto.

3. Tower objects to confirmation on the basis that the Debtor has failed to schedule payment of the replacement value of the property in which Tower has a security interest at an acceptable rate of interest over the length of the Chapter 13 plan. Tower further objects to any Motions for Valuations or Claim per Section 3.2 of the plan that purports that Tower is an unsecured creditor and to any claims of exemption for any property that is not exemptible or subject to a prior intervening creditor. A copy of the signed collateral list is attached hereto as Exhibit "A."

4. In the event that Debtor proposes to avoid nonpossessory, non-purchase money security interest securing Tower's claim(s) on the basis it impairs exemptions to which Debtor would be entitled under 11 U.S.C. § 522(b), and to the extent it does not, Tower denies that all of the property is exempt and objects to Debtor's claim of exemption for that property that is not exempt pursuant to Miss. Code Ann. § 85-3-1, et seq., or other applicable law.

5. Such failure is grounds for the denial of confirmation of the plan pursuant to §1325 of the Bankruptcy Code.

6. Should Debtor not be required to pay the replacement value of the collateral, then Tower requests that Tower be allowed to file an amended proof of claim as a general unsecured creditor.

WHEREFORE PREMISES CONSIDERED, Tower requests that this Court deny confirmation of the proposed plan for the reasons set forth and grant other such relief as the Court may deem proper and just.

Dated this 3rd day of July, 2019.

                                         FIRST TOWER LOAN, LLC

                                         By:/s/ Rebecca Guion Burton
                                                 Its Attorney

## CERTIFICATE OF SERVICE

    I do hereby certify that I have this day electronically filed with the Clerk of Court using the ECF system which sent notification, or mailed, via U.S. Mail, postage fully prepaid to non-ECF participants, a true and correct copy of the foregoing Amended Objection of Tower Loan to Confirmation of Chapter 13 Plan to the following:

| | |
|---|---|
| Robert Lomenick<br>rlomenick@gmail.com | Office of the U.S. Trustee<br>USTPRegion05.AB.ECF@us.doj.gov |
| | |
| Sevestin Martin<br>3595 Hwy 4 W.<br>Holly Springs, MS  38635 | Locke D. Barkley<br>ssmith@barkley13.com<br>Chapter 13 Trustee |

Dated this the __3rd__ day of July, 2019.


                                              By:/s/ Rebecca Guion Burton
                                                   Its Attorney

Prepared By:

Rebecca Guion Burton
MSB#: 105059
406 Liberty Park Court
P. O. Box 320001
Flowood, MS  39232-0001
Email: gburton@towerloan.com
Telephone: 601-992-0936
Facsimile: 601-992-5176

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Sevestin Martin** |
| | Full Name (First, Middle, Last) |
| Debtor 2 (Spouse, if filing) | |
| | Full Name (First, Middle, Last) |
| United States Bankruptcy Court for the | **NORTHERN DISTRICT OF MISSISSIPPI** |
| Case number: (If known) | |

☐ Check if this is an amended plan, and list below the sections of the plan that have been changed.

## Chapter 13 Plan and Motions for Valuation and Lien Avoidance     12/17

### Part 1: Notices

**To Debtors:** This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstances or that it is permissible in your judicial district. Plans that do not comply with local rules and judicial rulings may not be confirmable. The treatment of ALL secured and priority debts must be provided for in this plan.

In the following notice to creditors, you must check each box that applies

**To Creditors:** Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.

You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation on or before the objection deadline announced in Part 9 of the Notice of Chapter 13 Bankruptcy Case (Official Form 309I). The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015.

The plan does not allow claims. Creditors must file a proof of claim to be paid under any plan that may be confirmed.

The following matters may be of particular importance. **Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

| 1.1 | A limit on the amount of a secured claim, set out in Section 3.2, which may result in a partial payment or no payment at all to the secured creditor | ☑ Included | ☐ Not Included |
|---|---|---|---|
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.4. | ☑ Included | ☐ Not Included |
| 1.3 | Nonstandard provisions, set out in Part 8. | ☐ Included | ☑ Not Included |

### Part 2: Plan Payments and Length of Plan

**2.1  Length of Plan.**

The plan period shall be for a period of __60__ months, not to be less than 36 months or less than 60 months for above median income debtor(s). If fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan.

**2.2  Debtor(s) will make payments to the trustee as follows:**

Debtor shall pay __$975.50__ (☐ monthly, ☑ semi-monthly, ☐ weekly, or ☐ bi-weekly) to the chapter 13 trustee. Unless otherwise ordered by the court, an Order directing payment shall be issued to the debtor's employer at the following address:

Walmart
702 SW 8th Street
Bentonville AR 72716-6209

| Debtor | **Sevestin Martin** | Case number |
|---|---|---|

Joint Debtor shall pay _____ (☐ monthly, ☐ semi-monthly, ☐ weekly, or ☐ bi-weekly) to the chapter 13 trustee. Unless otherwise ordered by the court, an Order directing payment shall be issued to the joint debtor's employer at the following address:

2.3    **Income tax returns/refunds.**

*Check all that apply*
- ☒ Debtor(s) will retain any exempt income tax refunds received during the plan term.
- ☐ Debtor(s) will supply the trustee with a copy of each income tax return filed during the plan term within 14 days of filing the return and will turn over to the trustee all non-exempt income tax refunds received during the plan term.
- ☐ Debtor(s) will treat income refunds as follows:

**2.4 Additional payments.**
*Check one.*
- ☒ **None.** *If "None" is checked, the rest of § 2.4 need not be completed or reproduced.*

## Part 3: Treatment of Secured Claims

3.1    **Mortgages. (Except mortgages to be crammed down under 11 U.S.C. § 1322(c)(2) and identified in § 3.2 herein.).**

*Check all that apply.*
- ☒ **None.** *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*
*Insert additional claims as needed.*

3.2    **Motion for valuation of security, payment of fully secured claims, and modification of undersecured claims.** *Check one..*

- ☐ **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*
  ***The remainder of this paragraph will be effective only if the applicable box in Part 1 of this plan is checked.***

- ☒ Pursuant to Bankruptcy Rule 3012, for purposes of 11 U.S.C. § 506(a) and § 1325(a)(5) and for purposes of determination of the amounts to be distributed to holders of secured claims, debtor(s) hereby move(s) the court to value the collateral described below at the lesser of any value set forth below or any value set forth in the proof of claim. Any objection to valuation shall be filed on or before the objection deadline announced in Part 9 of the Notice of Chapter 13 Bankruptcy Case (Official Form 309I).

  The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 5 of this plan. If the amount of a creditor's secured claim is listed below as having no value, the creditor's allowed claim will be treated in its entirety as an unsecured claim under Part 5 of this plan. Unless otherwise ordered by the court, the amount of the creditor's total claim listed on the proof of claim controls over any contrary amounts listed in this paragraph.

| Name of creditor | Estimated amount of creditor's total claim # | Collateral | Value of collateral | Amount of secured claim | Interest rate* |
|---|---|---|---|---|---|
| GM Financial | $17,339.63 | 2008 Cadillac Escalade 121000 miles | $14,917.50 | $14,917.50 | 6.75% |
| Onemain Financial | $16,528.00 | 2007 Chevrolet Tahoe 300000 miles | $7,417.00 | $7,417.00 | 6.75% |
| Tower Loan | $1,100.00 | Living room furniture | $1,000.00 | $1,000.00 | 6.75% |

| Debtor | Sevestin Martin | | Case number | | |
|---|---|---|---|---|---|
| Name of creditor | Estimated amount of creditor's total claim # | Collateral | Value of collateral | Amount of secured claim | Interest rate* |
| United Auto Credit | $10,076.53 | 2008 GMC Sierra 2wd 202,000 miles | $8,257.50 | $8,257.50 | 6.75% |
| Vanderbilt Mortgage | $41,963.00 | 2008 Single-wide Manufactured home | $25,000.00 | $25,000.00 | 6.75% |

*Insert additional claims as needed.*

#For mobile homes and real estate identified in § 3.2: Special Claim for taxes/insurance:

| Name of creditor | Collateral | Amount per month | Beginning |
|---|---|---|---|
| Vanderbilt Mortgage | 2008 Singlewide Home | $85.92 | July 2019 |

* Unless otherwise ordered by the court, the interest rate shall be the current Till rate in this District

For vehicles identified in § 3.2: The current mileage is _____

### 3.3 Secured claims excluded from 11 U.S.C. § 506.

*Check one.*

☐ **None.** *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*
☑ The claims listed below were either:

(1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or

(2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under the plan with interest at the rate stated below. Unless otherwise ordered by the court, the claim amount stated on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) controls over any contrary amount listed below. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling.

| Name of Creditor | Collateral | Amount of claim | Interest rate* |
|---|---|---|---|
| Carmax Auto Finance | 2012 Mercedes Benz c250 80000 miles | $20,000.00 | 6.75% |

*Unless otherwise ordered by the court, the interest rate shall be the current Till rate in this District.

*Insert additional claims as needed.*

### 3.4 Motion to avoid lien pursuant to 11 U.S.C. § 522.

*Check one.*

☐ **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*
*The remainder of this paragraph will be effective only if the applicable box in Part 1 of this plan is checked.*

☑ The judicial liens or nonpossessory, nonpurchase money security interests securing the claims listed below impair exemptions to which the debtor(s) would have been entitled under 11 U.S.C. § 522(b). Unless otherwise ordered by the court, a judicial lien or security interest securing a claim listed below will be avoided to the extent that it impairs such exemptions upon entry of the order confirming the plan unless the creditor files an objection on or before the objection deadline announced in Part 9 of the Notice of Chapter 13 Bankruptcy Case (Official Form 309I). Debtor(s) hereby move(s) the court to find the amount of the judicial lien or security interest that is avoided will be treated as an unsecured claim in Part 5 to the extent allowed. The amount, if any, of the judicial lien or security interest that is not avoided will be paid in full as a secured claim under the plan. See 11 U.S.C. § 522(f) and Bankruptcy Rule 4003(d). If more than one lien is to be avoided, provide the information separately for each lien.

| Debtor | **Sevestin Martin** | | Case number | | |
|---|---|---|---|---|---|
| Name of creditor | Property subject to lien | Lien amount to be avoided | Secured amount remaining | Type of lien | Lien identification (county, court, judgment date, date of lien recording, county, court, book and page number) |
| First Heritage Credit | 32" TV ($150), 40" TV ($150) (Remaining collateral broken/discarded) | $300.00 | $0.00 | UCC | UCC #: 20141390987A & 20182608729A |
| Tower Loan | Wrench & Socket Set ($50), Necklace ($200), PS4 ($200). Remaining collateral has prior lien, or was broken/discarded | $450.00 | $0.00 | UCC | UCC #: 20182789514A |

*Insert additional claims as needed.*

**3.5**    **Surrender of collateral.**

*Check one.*

☐ **None.** *If "None" is checked, the rest of § 3.5 need not be completed or reproduced.*
☑ The debtor(s) elect to surrender to each creditor listed below the collateral that secures the creditor's claim. The debtor(s) request that upon confirmation of this plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under § 1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 5 below.

| Name of Creditor | Collateral |
|---|---|
| Onemain Financial | Ipad, Troy Riding mower ($0.00. all items junked) |

*Insert additional claims as needed.*

### Part 4:    Treatment of Fees and Priority Claims

**4.1    General**
Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in § 4.5, will be paid in full without postpetition interest.

**4.2    Trustee's fees**
Trustee's fees are governed by statute and may change during the course of the case.

**4.3    Attorney's fees.**

☑ No look fee: **$3,600.00**

Total attorney fee charged:    $3,600.00

Attorney fee previously paid:    $190.00

Attorney fee to be paid in plan per confirmation order:    $3,410.00

☐ Hourly fee: $_____. (Subject to approval of Fee Application.)

**4.4    Priority claims other than attorney's fees and those treated in § 4.5.**

*Check one.*
☐ **None.** *If "None" is checked, the rest of § 4.4 need not be completed or reproduced.*

| Debtor | Sevestin Martin | | Case number | |
|---|---|---|---|---|
| ☑ | Internal Revenue Service | $12,000.00 | | |
| ☑ | Mississippi Dept. of Revenue | $3,000.00 | | |
| ☐ | Other | | $0.00 | |

**4.5    Domestic support obligations.**

☐ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

DUE TO:   **MDHS - CSE/Victoria Martin**
POST PETITION OBLIGATION: In the amount of $ **1307.00**   per month beginning   **May 2019**
To be paid ☐ direct, ☑ through payroll deduction, or ☐ through the plan.

PRE-PETITION ARREARAGE: In the amount of $ **0.00**   through   **0**
which shall be paid in full over the plan term, unless stated otherwise:
To be paid ☐ direct, ☐ through payroll deduction, or ☐ through the plan.

*Insert additional claims as needed.*

**Part 5:    Treatment of Nonpriority Unsecured Claims**

**5.1    Nonpriority unsecured claims not separately classified.**

Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata. If more than one option is checked, the option providing the largest payment will be effective. *Check all that apply.*
☐ The sum of $
☑   **0**  % of the total amount of these claims, an estimated payment of $____
☐ The funds remaining after disbursements have been made to all other creditors provided for in this plan.

If the estate of the debtor(s) were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately **$0.00**.
Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least this amount.

**5.2    Other separately classified nonpriority unsecured claims (special claimants).** *Check one.*

☐ **None.** *If "None" is checked, the rest of § 5.2 need not be completed or reproduced.*
☑ The nonpriority unsecured allowed claims listed below are separately classified and will be treated as follows:

| Name of Creditor | Basis for separate classification and treatment | Approximate amount owed | Proposed treatment |
|---|---|---|---|
| Navient | Student Loans | $45,000.00 | **See Part 8.1 |

*Insert additional claims as needed.*

**Part 6:    Executory Contracts and Unexpired Leases**

**6.1    The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected.** *Check one.*

☑ **None.** *If "None" is checked, the rest of § 6.1 need not be completed or reproduced.*

**Part 7:    Vesting of Property of the Estate**

**7.1    Property of the estate will vest in the debtor(s) upon entry of discharge.**

**Part 8:    Nonstandard Plan Provisions**

Debtor    **Sevestin Martin**    Case number

**8.1    Check "None" or List Nonstandard Plan Provisions**
☐    **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below. A nonstandard provision is a provision not otherwise included in the Official Form or deviating from it. Nonstandard provisions set out elsewhere in this plan are ineffective.*

*The following plan provisions will be effective only if there is a check in the box "Included" in § 1.3.*

1.    The student loan obligation owed to Navient is in an I.B.R Plan, and the payment is set at $53/month. This indebtedness will be paid directly by the debtor according to the terms of the repayment plan in place with the Creditor.

**Part 9:    Signatures:**

**9.1    Signatures of Debtor(s) and Debtor(s)' Attorney**
*The Debtor(s) and attorney for the Debtor(s), if any, must sign below. If the Debtor(s) do not have an attorney, the Debtor(s) must provide their complete address and telephone number.*

X    **/s/ Sevestin Martin**                    X    _____
   **Sevestin Martin**                            Signature of Debtor 2
   Signature of Debtor 1

   Executed on    **May 2, 2019**                Executed on _____

   **3595 Hwy 4 W**
   Address                                       Address
   **Holly Springs MS 38635-0000**
   City, State, and Zip Code                     City, State, and Zip Code

   Telephone Number                              Telephone Number


X    **/s/ Robert H. Lomenick**                   Date    **May 2, 2019**
   **Robert H. Lomenick 104186**
   Signature of Attorney for Debtor(s)
   **126 North Spring Street**
   **Post Office Box 417**
   **Holly Springs, MS 38635**
   Address, City, State, and Zip Code
   **662-252-3224**                              **104186 MS**
   Telephone Number                              MS Bar Number
   **rlomenick@gmail.com**
   Email Address

# INSTALLMENT LOAN AGREEMENT AND DISCLOSURE STATEMENT

LOAN NUMBER: 35

BORROWER NAME: SEVESTIN F MARTIN
ADDRESS: 3595 HWY 4 WEST HOLLY SPRINGS, MS 38635

CO-BORROWER NAME: 
ADDRESS:

DATE OF LOAN: 11/15/2018

Lender: FIRST TOWER LOAN, LLC DBA TOWER LOAN OF HOLLY SPRINGS
PO BOX 802, HOLLY SPRING, MS, 38635

## FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Schedule of Consecutive Monthly Payments | |
|---|---|---|---|---|---|
| 38.61% | 1806.80 | 3679.20 | 5486.00 | Number of payments: 26 | Amount of each payment: 211.00 |
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled | 1st Payment Due: 12/15/2018 | Last Payment Due: 1/15/2021 |

SECURITY: You are giving a security interest in Personal Property

Collateral securing this and other loans you have with us also secures other and future indebtedness.
LATE CHARGE: If a payment is more than 15 days late, you will be charged the greater of $5.00 or 4% of the payment, not to exceed $50.00

FILING FEES: $ 18.00

PREPAYMENT: If you pay off early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge.

See your Promissory Note and Security Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## ITEMIZATION OF AMOUNT FINANCED UNDER FEDERAL LAW OF $ 3679.20

- Amount given to you directly: $ 211.52
- Amount paid on your account: $ 2743.03
- Amounts paid to others on your behalf (we may be retaining a portion of this amount):
  - Public officials: $ 18.00
  - Insurance company:
    - Credit Life: $ 95.09
    - Credit Disability: $ 252.36
    - Credit Property: $ 239.20
  - Car Club: $ 120.00
  - NAME: $ 0.00
  - NAME: $ 0.00
  - NAME: $ 0.00
  - NAME: $ 0.00
  - NAME: $ 0.00
  - NAME: $ 0.00
- Closing Fee: $ 219.44
- Subtotal of above amounts: $ 3898.64
- LESS Prepaid Finance Charge: $ 219.44
- Amount Financed (TOTAL): $ 3679.20

INSURANCE: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the annual cost.

| TYPE | D&D C.L | LVL. C.L | PREMIUM | | SIGNATURES | | |
|---|---|---|---|---|---|---|---|
| Single Credit Life | X | | $ 95.09 | I/We want credit Life insurance: | X: Sevest Mart | X: | X: |
| Joint Credit Life | | | $ 0.00 | We want credit Life insurance: | X: | X: | X: |
| Credit Disability | X | | $ 252.36 | I want credit disability insurance: | X: Sevest Mart | | |

You may obtain property insurance from anyone you want, provided the insurance company is acceptable to the creditor. If you get personal property insurance from or through the creditor, you will pay $ 239.20

☒ Dual Interest
☐ Single Interest

## DISCLOSURES REQUIRED BY MISSISSIPPI LAW:

Excluding the closing fee of $ 219.44 from the finance charge, the state finance charge is $ 1,587.36 and the state contract rate is 32.58 %

## PROMISSORY NOTE AND SECURITY AGREEMENT

ALL INFORMATION IN THE ABOVE DISCLOSURE STATEMENT IS INCLUDED HEREIN BY REFERENCE

PARTIES: "Borrower" means all Borrowers signing below whether one or more; and "Lender" means the Lender named above.
NOTE: For value received, Borrower, jointly and severally, promises to pay to the order of Lender the "Total of Payments" (see above), in the monthly payments stated in the "Schedule of Payments" (see above) until paid in full. Any extension, renewal, renewals, or other indulgences by Lender shall not release Borrower. Borrower waives protest.
LATE CHARGE: Borrower shall pay Lender a late charge, the greater of $5.00 or 4% of the payment on any payment that continues unpaid for more than fifteen (15) days following its due date, but Borrower shall not pay more than $50.00 on any one scheduled payment.
PREPAYMENT REFUND: When Borrower prepays this loan in full, then: (i) If paid by a renewal loan from Lender within 30 days from the date of this loan, Lender shall cancel or refund all of the above finance charges, closing fee and credit insurance premiums on this loan, (ii) If paid by a renewal loan from Lender after 30 days, but before 90 days from the date of this loan, Lender shall refund the unearned finance charges computed by the actuarial method; (iii) If paid or renewed after 90 days from the date of this loan, Lender shall refund the unearned finance charges computed by the Rule of 78s based on the number of days Borrower pays early, less 20 days.
SECURITY INTEREST: To secure payment of this loan, Borrower grants Lender a security interest in the property described below under "Security."
BORROWER'S DUTIES: If Lender requests, Borrower shall maintain fire, theft, and extended coverage insurance on the security. Such insurance policies shall be payable to Lender and Borrower as Borrower's interest shall appear and shall provide Lender with at least ten (10) days written notice before cancellation. In addition, Borrower shall keep the security at Borrower's address shown above, in good repair and free from adverse liens and security agreements.
DEFAULT: Borrower defaults when: (i) Borrower does not pay any payment in full when due; (ii) Borrower does not fully perform any of Borrower's duties under this agreement; (iii) Borrower moves the security without first giving Lender written notice; (iv) Borrower abandons the security; (v) any of the security is lost, stolen, not maintained, destroyed, or substantially damaged; (vi) Borrower death or incompetency; (vii) Borrower defaults under another Tower Loan agreement, or (viii) Lender reasonably deems itself insecure.
REMEDIES: When Borrower defaults, Lender can take one or more of the following actions: (i) cancel any credit insurance and apply unearned premiums to the account; (ii) in accordance with the arbitration agreement, bring suit for or arbitrate the delinquent payments; (iii) accelerate and declare due, without notice or further demand for payment, the remaining balance (but in such event, upon receiving full payment, Lender shall rebate the unearned finance charge on the date of payment by using the method described in Prepayment Refund (above); (iv) repossess and dispose of any security as a secured party under the Mississippi Uniform Commercial Code; and/or (v) foreclose on any securing deed of trust on realty. Ten (10) days notice by regular mail to Borrower at the above address shall be reasonable notice to Borrower of any disposition of any security. Lender may hire or pay an attorney to help collect the Note or recover its collateral if Debtor does not pay or if Debtor files bankruptcy. Debtor will reimburse Lender for these costs. This includes, subject to limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to lift, modify, or vacate any automatic stay or injunction), for defending against unsuccessful counterclaims, and appeals.
OTHER INDEBTEDNESS: The security agreement secures all other and future indebtedness Borrower owes to Lender. Collateral securing other loans Borrower has with Lender also secures this loan.
CREDIT REPORTING: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.
GOVERNING LAW: The construction, validity and enforcement of this loan agreement shall be governed by the laws of the State of Mississippi, without regard to the principles of conflicts of laws.
SEVERABILITY: The illegality or unenforceability of any provision of this Promissory Note and Security Agreement or any instrument or agreement entered into in connection herewith including, without limitation, the Arbitration Agreement, shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Promissory Note and Security Agreement, the Arbitration Agreement or any other instrument or agreement entered into in connection herewith.
SECURITY: The security to which the security interest granted hereunder attaches is indicated below and is more particularly described as follows:
  VALUE: We represent to you the value of any personal property security below is ................................................. $ 3,680.00
This value excludes the value of any motor vehicles, livestock, boats or mobile homes
TROYBUILT RIDING MOWER, WEEDEATER, WRENCH SET, SOCKET SET, 14K GOLD LINK NECKLACE, 2ND TV- 40" SONY FLATSCREEN TV, 3RD TV- -46" EMERSON FLATSCREEN TV, PLAYSTATION 4, VIDEO GAME COLLECTION, DELL LAPTOP, IPAD

ARBITRATION AGREEMENT: BY SIGNING BELOW AND OBTAINING THIS LOAN, BORROWER AGREES TO THE ARBITRATION AGREEMENT ON THE ADDITIONAL PAGES OF THIS AGREEMENT. YOU SHOULD READ IT CAREFULLY BEFORE YOU SIGN BELOW. IMPORTANT PROVISIONS, INCLUDING OUR PRIVACY POLICY, ARE CONTAINED ON ADDITIONAL PAGES AND INCORPORATED HEREIN.

_Sevest Mart_
BORROWER            BORROWER            BORROWER

THIS DOCUMENT IS SUBJECT TO A SECURITY INTEREST IN FAVOR OF BANK OF AMERICA, N.A., AS AGENT
MS Rev 02/2018

PERSONAL PROPERTY OFFERED AS
COLLATERAL FOR LOAN FROM TOWER LOAN

| Item | Value |
|---|---|
| 1- TROYBUILT RIDING MOWER | 900.00 |
| 1- WEEDEATER | 100.00 |
| 1- WRENCH SET | 100.00 |
| 1- SOCKET SET | 100.00 |
| 1- 14K GOLD LINK NECKLACE | 400.00 |
| 1- 2ND TV- 40" SONY FLATCSREEN TV | 500.00 |
| 1- 3RD TV- -46" EMERSON FLATSCREEN TV | 550.00 |
| 1- PLAYSTATION 4 | 380.00 |
| 1- VIDEO GAME COLLECTION | 100.00 |
| 1- DELL LAPTOP | 350.00 |
| 1- IPAD | 200.00 |
| Total: | 3680.00 |

EXHIBIT A

I hereby certify that I am the owner of the above items offered as collateral, that these items are not already insured and that the values shown are true and correct.

_____
Customer

DATE: 11-15-18

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
First Tower Corp    601-992-0153

B. EMAIL CONTACT AT FILER (optional)
dale@towerloan.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

FIRST TOWER CORP.
P O BOX 320001
FLOWOOD, MS  39232-0001

File Number
Date Filed: 12/1/2018 10:10:57 AM
C. Delbert Hosemann, Jr.
Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| MARTIN | SEVESTIN | F | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3595 HWY 4 WEST | HOLLY SPRINGS | MS | 38635 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| FIRST TOWER LOAN, LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 802 | HOLLY SPRING | MS | 38635 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
,,, TROYBUILT RIDING MOWER, WEEDEATER,, WRENCH SET, SOCKET SET,,,,,,,,, 14K GOLD LINK NECKLACE,, 2ND TV- 40" SONY FLATCSREEN TV, 3RD TV- -46" EMERSON FLATSCREEN TV, PLAYSTATION 4, VIDEO GAME COLLECTION,,,,,, DELL LAPTOP, IPAD,,,,,,,,,,

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)

Date of Contract: 8/2/2018

# RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE AGREEMENT

## BUYER
- LAST NAME: martin
- FIRST: sevestin
- INITIAL:
- ACCOUNT NUMBER:
- STREET ADDRESS: 3595 hwy 4 west
- CITY: holly springs
- STATE: MS
- ZIP: 38635

## SELLER
- NAME: CLASSIC HOME FURNITURE
- SALESMAN:
- STREET ADDRESS: 773 GOODMAN ROAD
- CITY: SOUTHAVEN
- STATE: MS
- ZIP: 38671

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 23.99 % | $ 573.52 | $ 1,391.00 | $ 1,964.52 | $ 1,964.52 |

Number of Payments: 36
Amount of Payments: 54.57
When Payments are Due: Monthly Beginning 09/01/2018

## ITEMIZATION OF AMOUNT FINANCED
1. Cash Price (including sales tax)  $ 1,391.00
2. Cash Downpayment  $ 0.00
   Total Downpayment  $ 0.00
3. Amount Paid to Others on Your Behalf
   a. To Your Prior Account No. N/A  $ 0.00
   b. N/A  $ 0.00
   Total Paid to Others on Your Behalf  $ 0.00
4. Unpaid Balance (1-2+3)  $ 1,391.00
5. Amount Financed (4)  $ 1,391.00

DESCRIPTION OF GOODS OR SERVICES (collectively the "Goods")
sectional
SEE ATTACHED INVOICE

INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT

PARTIES, NOTE, DEFAULT, REMEDIES, CREDIT REPORTING clauses...

TITLE, CREDITORS: If Tower Loan of Mississippi LLC, First Tower Loan LLC, or Gulfco of Mississippi LLC, ("Tower"), P.O. Box 320001, Flowood, MS 39232, buys this contract then all disclosures are made jointly by Seller and Tower.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

REFUND FOR REPAYMENT IN FULL, LATE CHARGE clauses...

FINANCE CHARGE REFUND OPTION (Dealer checks one if applicable)
[ ] 30 days   [ ] 180 days   [ ] 365 days   [X] 750 days

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT
MS RISC 02/18                                                                                                                     PAGE 1 OF 3 PAGES

READ THIS ARBITRATION AGREEMENT CAREFULLY. This arbitration agreement limits your rights to use the Courts.

By signing this loan, Lender binds itself to this arbitration agreement.

The Buyer, Seller and any successors or assignees, hereinafter referred to as "The Parties".

Arbitration is a method of resolving disputes between parties without going to court. The Parties agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Buyer were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. The Parties understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

The Parties agree that they shall arbitrate all disputes between them on the following terms:

(1) This arbitration agreement applies to all claims and disputes between The Parties. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
   • The consumer credit contract Buyer is obtaining from Seller today and any other retail Installment contracts with Seller;
   • Any insurance purchased in connection with this consumer credit contract or any previous retail installment sales contract;
   • Any other product or service purchased in connection with this consumer credit contract;
   • Whether the claim or dispute must be arbitrated;
   • The validity of this arbitration agreement;
   • Any negotiations or discussions between us;
   • All claims or disputes based upon Federal or State laws or regulations;
   • Class action types of claims and consolidated claims;
   • Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys' fees.

(2) This arbitration provision or agreement also applies to all disputes and claims between The Parties. The Parties agents, employees, affiliated companies and the employees or agents of such affiliated companies.

(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.

(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C. §5) shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.

(5) The arbitration shall be held in Rankin County, Mississippi, unless the Borrower requests in the demand for arbitration or the answering statement, the arbitration be held in his, her, or its county of residence or principal place of business.

(6) Except as they conflict with our arbitration provision, all arbitrations under this provision shall follow the procedures set forth in the provisions of the Federal Arbitration Act, which are incorporated by reference.

(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.

(8) Neither party is required to initiate arbitration proceedings for matters of $10,000 or less (inclusive of attorneys' fees and costs). Seller is not required to initiate arbitration before repossessing or foreclosing upon collateral. However, and notwithstanding the foregoing, disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.

(9) Subject to paragraph (8), if either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.

(10) The Parties hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.

(11) The Parties agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.

(12) Once the arbitrator has rendered a decision, either party may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator. Except for the foregoing, the arbitration award is not subject to judicial review.

This agreement does not affect or extend any applicable statutes of limitation.

By: _____ Witness _____
CLASSIC HERO-FLEX
Seller

_____ _____
Buyer    Buyer

This document is subject to a security interest in favor of BANK OF AMERICA, N.A., AS AGENT.

Buyer has read and understands all of the additional terms continued on all of the pages hereof and agrees that they are part hereof as if set forth at this point.

This agreement consists of 3 pages.

NS-R-SC-0708    PAGE 2 OF 3 PAGES

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns, and transfers to ___TOWER LOAN___ (The Assignee herein), its successors or assigns, the above contract, all monies due or to become due, and in and to the property described herein and all rights and remedies under said contract, including the right to collect all installments due thereunder and the right (either in its own name or in dealer's name) to take all such proceedings, legal or otherwise, as Seller might have taken save for this Assignment. To induce the Assignee to purchase this contract, the Seller unconditionally guarantees and warrants to it as follows: (1) That no legal or equitable defenses exist against this contract; (2) That the Seller has fully complied with all federal, state and local laws and regulations regarding this contract, including, without limitation, any regulations of the Consumer Financial Protection Bureau and/or the Federal Reserve Board on consumer credit, the Gramm-Leach-Bliley Act and the USA Patriot Act; (3) That all disclosures and representations made on or in this contract are due and correct as shown; (4) That this contract and the signatures shown thereon are genuine; (5) That the Buyer was fully competent and of legal age of majority under the existing laws of the state of residence of Buyer to execute this contract; (6) That the Seller had a good and merchantable fee simple title to the Goods at the time of the execution of this sale and that said contract provides a primary lien on the Goods described above as security for the unpaid balance due on the purchase price thereof which is prior and superior to any claim on the date of this contract; (7) The Goods and/or services furnished to Buyer are free from defects which Buyer can either claim against Assignee or raise as a defense to any suit by Assignee pursuant to 16 C.F.R. part 433; (8) That the note and security agreement was given in a bona fide transaction for goods furnished and/or services rendered; (9) That the credit information listed herein represents actual statements made by the Buyer of merchandise involved and that the terms listed herein are true and correct statements of the terms under which said merchandise was sold to the Buyer; (10) That the balance due on said account as shown herein is the true and correct amount due from Buyer and such amount is not now disputed by Buyer; (11) That the written instruments, if any, evidencing or securing said account receivable contain the entire contract between the undersigned and the buyer and there is no special or side arrangement for rebate, extension of payment, or other concession affecting said account; (12) That no legal action has been commenced by the undersigned to collect said account receivable.

If Buyer brings any claim or legal action against Assignee, whether by arbitration, direct suit, counterclaim or otherwise claiming any defect, deficiency in the Goods, and/or services covered by this contract, based upon fraud or Seller's failure to comply with applicable law, Seller shall indemnify and hold Assignee harmless against any such suit, damages, attorneys fees, and expenses arising therefrom, and pay any and all costs and all attorneys fees incurred by Assignee in defending said claim.

If Assignee renews, extends, or changes due date of contract, the undersigned shall continue to be responsible on all agreements in this assignment. If any of the foregoing warranties are breached, or if any of the representations be untrue, then the undersigned will upon demand repurchase the contract from Assignee and pay it in cash in an amount equal to the entire unpaid balance on said contract with accrued interest and costs. If Assignee seeks the services of an attorney to enforce the provisions of this Assignment, including any action based upon breach of the foregoing warranties, then the Seller shall pay all costs of court and all attorneys fees incurred by Assignee.

WITNESS our signatures this the ___2ND___ day of ___AUGUST___ 2018

CLASSIC HOME FURNITURE

By: _____

# CLASSIC HOME FURNITURE

INVOICE

773 Goodman Road
Southaven, MS 38671

www.classichomememphis.com

NO. _____
DATE 8/2/18
SOLD BY _____
Cust. _____  Inv. _____

**SOLD TO:**
NAME: SEBASTIAN PRATT J
ADDRESS: 7705 PAULING W #4
CITY: _____ STATE: _____ ZIP: 38671
HOME: _____ CELL: _____
EMAIL: _____

DELIVERY INSTRUCTIONS: _____

| SA | SO | HO | DEPT. | VENDOR | ITEM NO. | DESCRIPTION | LOC. | QU. | PRICE | AMOUNT |
|----|----|----|-------|--------|----------|-------------|------|-----|-------|--------|
|    |    |    |       |        | 0010603  | SECTIONAL   |      |     |       |        |

RECEIVED IN GOOD CONDITION BY: _____

DELIVERY CHARGE
SUB TOTAL
TAX
TOTAL
DEPOSIT
BALANCE DUE

- Special Orders require a non-refundable deposit and may not be cancelled or exchanged. Classic Home Furniture is not responsible for delays in manufacturing or shipping delays and a delay does not constitute a refund.
- Layaways are non-refundable or transferable.
- Due to Classic Home Furniture's factory direct pricing, stocking, and merchandising, ALL SALES ARE FINAL.
- No pick ups after 5:00 pm. Classic Home Furniture is not responsible for merchandise once it has left the premises. Please inspect merchandise.

PURCHASER _____

CLAIMS MUST BE ACCOMPANIED BY THIS INVOICE.

Thank You